Louise Ross v. Commissioner. Walter Ross, Jr. v. Commissioner.
Ross v. Commissioner
Docket Nos. 4358-62, 4359-62.
United States Tax Court
T.C. Memo 1964-333; 1964 Tax Ct. Memo LEXIS 4; 23 T.C.M. (CCH) 2061; T.C.M. (RIA) 640333; December 29, 1964
Ralph H. Schuette, for the petitioners. Sanford S. Neuman, for the respondent. FORRESTER
Memorandum Findings of Fact and Opinion FORRESTER, Judge: The Commissioner determined deficiencies in the petitioners' income tax as follows: Deficiencies
Year
Income Tax
Louise Ross
1957
$576.00
1958
185.50
Walter Ross, Jr.
1957
305.36
1958
156.00 The issue for decision are: 1. Whether payments received by petitioner, Louise Ross (hereinafter sometimes referred to as Louise), during 1957 and 1958 are includable in her taxable gross income as alimony within the meaning of section 71(a)(1) of the Internal Revenue Code of 1954. [1]
2. Whether any part of the payments *6 in question are excludable from petitioner's, Louise Ross', gross income as child support payments. 3. Whether petitioner, Walter Ross, Jr., is entitled to a personal exemption for his wife, Louise, during the years 1957 and 1958 on the theory that she had no gross income during those years. 4. Whether petitioner, Walter Ross, Jr., is entitled to a dependency exemption for his minor son, Robert B. Ross, for 1957. 5. Whether petitioner, Louise Ross, is entitled to a deduction for interest expense paid in 1957 as a part of installment payments she made on an automobile. Other issues have been conceded by agreement of the parties and will be given effect under Rule 50. Some of the facts have been stipulated and are so found. The petitioners, Walter Ross, Jr., and Louise Ross, are individuals residing at Pecan Drive, Paducah, Kentucky. Walter Ross, Jr., filed income tax returns for the years 1957 and 1958 with the district director of internal revenue, Louisville, Kentucky. Petitioner, Louise Ross, filed no separate Federal income tax return for either of those years. On April 16, 1937, Louise Ross and George C. Ritchie (hereinafter sometimes referred to as Ritchie), were *7 married in Humphrey's County, Tennessee. On the next day, April 17, 1937, a divorce from George C. Ritchie was granted to Mary Evon Ritchie. Louise Ross knew of Ritchie's earlier marriage but thought it had been dissolved by divorce. She did not learn of the date of Ritchie's divorce until 1964. Louise Ross and George Ritchie lived together in Kentucky as husband and wife until 1953 when they separated. The couple had one child, Juanita Ray Ritchie. On March 4, 1957, Louise and Ritchie entered into a written property settlement agreement providing inter alia (1) for George Ritchie to pay Louise and their daughter, Juanita Ray Ritchie, $465 per month for their maintenance, support and alimony as long as they both remain single; (2) for Louise to be paid $232.50 per month in the event their daughter, Juanita, should marry before she reaches 18 years of age, and if Louise should marry after Juanita reaches 18 years, she was to be paid $50 per month for an additional 3 years; (3) for Louise to retain and make payments on a 1957 Roadmaster Buick automobile. On March 8, 1957, the following decree was issued by the McCracken Circuit Court of McCracken County, Kentucky: McCracken Circuit *8 Court Nancy Louise Ritchie Plaintiff vs: Findings of Fact, Conclusions of Law and Judgment George Ritchie Defendant The above styled case having been submitted to the Court for trial and judgment upon the pleadings, proof and exhibits on file, the Court finds the following facts: 1. That the plaintiff and defendant are citizens and residents of McCracken County, Kentucky. 2. That the plaintiff and defendant were legally married on April 16, 1937, and that they lived together as husband and wife until some time in October of 1953, and that since this time they have not lived or cohabited together. 3. That the defendant is properly before the Court by having filed his verified answer entering his appearance and eaiving [waiving the] notice, and waiving the 20 days requirement for him to file answer and make defense, waiving the notice of taking of depositions and the submission of the case for judgment. 4. That they have entered into a written agreement wherein they have settled their property rights and the custody and control of their single daughter, Juanita Ray Ritchie, who is 14 years of age, together with all of the plaintiff's rights to alimony, maintenance and *9 support, together with the custody and control of their daughter, Juanita Ray Ritchie. 5. That the Court has jurisdiction over this case, and that the cause of divorce as set out occurred in this state and within five years next before the commencement of this action. Conclusions of Law The law in Kentucky is that if a person, without fault or like fault on her part, has been abandoned by her husband for more than one year before the filing of the complaint, that it is grounds for divorce. Judgment IT IS THEREFORE THE JUDGMENT OF THE COURT: 1. That the plaintiff, Nancy Louise Ritchie, is hereby divorced absolutely from the defendant, George Ritchie, and that the bonds of matrimony now existing be cancelled, set aside and held for naught, and both of the parties are restored to all the rights and privileges of a single person. 2. That the plaintiff is to have the custody and control of their infant daughter, Juanita Ray Ritchie, with the defendant to have the right to visit said child at reasonable times and in reasonable, sober circumstances. 3. It is further the judgment of the Court that the contract or agreement of settlement of their property rights is incorporated *10 and embraced herein as a part of this judgment, and it is in words and figures as follows, to wit: THIS CONTRACT made and entered into this the 4th day of March, 1957, by and between Nancy Louise Ritchie, party of the first part, and George Ritchie, party of the second part, WITNESSETH, THAT WHEREAS the party of the first part and the party of the second part are husband and wife; and whereas they have separated and there is no possibility of them becoming reconciled and living together; NOW THEREFORE, in order to settle their property rights between them and as a consideration herein, it is agreed and understood that the house and lot and household furniture located on Route 1, Pecan Drive, that the plaintiff is now occupying and is jointly owned, that the defendant is to deed to the plaintiff this property subject to any lien that may be against it, for which the plaintiff accepts and agrees to pay. That in addition thereto the plaintiff is to retain the 1957 Roadmaster Buick automobile, and agrees to assume and pay any payments that may be due on it. That the defendant is to retain and keep the 1947 Plymouth automobile, and to keep two radios that are now located in their *11 home. It is agreed and understood that the defendant is to pay for the maintenance and support, and alimony of the plaintiff and their daughter, Juanita Ray Ritchie, the sum of $465.00 per month as long as they both remain single. This sum to be paid in two installments, one-half every fifteen days. In the event Juanita Ray Ritchie should marry before she reaches eighteen years of age, the plaintiff is to be paid $232.50 per month until she reaches eighteen years. If the plaintiff should marry after Juanita Ray reaches eighteen years, it is agreed that she is to be paid $50.00 per month for an additional three years. The defendant agrees that he will make all necessary written agreements to convey the property as herein described. IN TESTIMONY WHEREOF, the party of the first part and the party of the second part have hereunto subscribed their names this the day and date first above written. /s/ Louise Ritchie /s/ Geo. C. Ritchie AND This case, insofar as it affects the divorce, is hereby stricken from the docket. /s/ Holland G. Bryan Judge, McCracken Circuit Court. Pursuant to the terms of the court decree Louise was paid $465 a month from March 1957 to October *12 1957. On October 26, 1957, petitioners, Louise Ross and Walter Ross, Jr., were married. Subsequent to their marriage in October 1957, Louise received $232.50 per month from George Ritchie. Ritchie wrote child care on the checks for $232.50 he sent after Louise's remarriage. On August 29, 1958, the McCracken Circuit Court entered a modified judgment in the case of Nancy Louise Ritchie v. George Ritchie stating that Louise had remarried and was no longer entitled to receive the monthly payments provided for in the original judgment, and that Louise was financially able to assume the responsibilities of her daughter's support, and no longer desired George Ritchie to maintain and support their daughter. This modified judgment relieved George Ritchie from making further monthly, payments to Louise. It is set out below: McCracken Circuit Court Civil Action No. 2412 Nancy Louise Ritchie Plaintiff vs: Modified Judgment George Ritchie Defendant This case having been submitted to the Court by agreement of parties upon the petition to modify filed by the defendant and the reply to said petition to modify filed by the plaintiff which was verified by the plaintiff and their sixteen year *13 old daughter, Juanita Ray Ritchie disclosing the fact that since the original judgment was filed herein and directing the defendant to pay into Court monthly the sum of $465.00, for the alimony and maintenance and support of the plaintiff and their infant daughter, that the plaintiff has re-married to one Walter H. Ross Jr., and that she is no longer entitled to receive any part of the monthly payment which original judgment provided that she was to draw by reason of her said re-marriage, and that by reason of her reply stating that she no longer desires the defendant to maintain and support their infant daughter and that she is financially able to assume the responsibility of their daughter's support, and it further appearing in said reply that the visits of the defendant with their daughter is obnoxious and distasteful to both the plaintiff and their daughter and the court being sufficiently advised it is ordered and adjudged that said original judgment be and the same is hereby modified and the provision wherein monthly payment was adjudged to be paid is hereby cancelled and set aside. That the provision giving the defendant the right to visit their daughter Juanita Ray Ritchie *14 upon reasonable times and placed and she to have the right to visit the defendant at reasonable times and places is hereby modified and same is hereby cancelled and set aside. The provision in said judgment for any payment of any alimony to the plaintiff by the defendant is forever set aside, but the payment of the maintenance and support together with the visitation of the defendant with their infant daughter is cancelled and set aside until further orders of the Court. It is further adjudged by the Court that the defendant is to pay the costs of this action, together with a reasonable attorneys fee to plaintiff's attorneys, Garrison & Myre, and for further orders this case is continued. /s/ C. Warren Eaton Judge, McCracken Circuit Court Pursuant to the terms of the decree of March 8, 1957, issued by the McCracken Circuit Court, Louise received from George Ritchie $4,000 in 1957 and $1,627.50 in 1958. She had no other income during those years. Ritchie deducted these payments to her as alimony payments on his Federal income tax returns for those years. Beginning on March 15, 1957, and ending in November 1957, Louise used part of this money to make monthly payments of $134.19 *15 toward the purchase of the Buick automobile referred to in the property settlement and the court decree of March 8, 1957. The total price of the car was $4,830.84. The price of the car and the carrying charges were not stated separately in arriving at the figure of $4,830.84. When Ritchie refused to transfer the title to her, she stopped payments in November 1957, and the car was taken from her possession in December of 1957. Petitioner, Walter Ross, Jr., did not include in his income tax returns for the years in question the amounts received by his wife, Louise Ross, from George Ritchie. Petitioner, Walter Ross, Jr.'s tax return for 1957 and 1958 bear his signature only. He claimed an exemption of $600 for his wife for each year. On his return for 1957 petitioner, Walter, claimed a dependency exemption for his son, Robert B. Ross. During 1957 the boy attended high school from January to June. From January through September 26, 1957, petitioner paid $50 a week to his former wife for the support of her and their two minor children, a daughter and Robert B. Ross, their son. Both children and his former wife lived in a house owned by Walter. From September 26, 1957, through the end *16 of the year Walter paid $40 a week to his wife and his dependent daughter. The record does not indicate where the son lived or how he was provided for during the last 3 months of 1957, nor is there evidence of whether the son had a job at any time during 1957. The petitioner, Walter, did not show the total amount expended for the support of his son, Robert, during 1957. Petitioner, Walter Ross, Jr., in 1958 paid interest on the mortgage on the Route 1, Pecan Drive house in the sum of $271.29 and deducted that amount on his Federal income tax return. Issues 1 and 2 On brief the parties were concerned with whether the marriage of George Ritchie to petitioner, Louise Ross, was valid under Kentucky law. Louise argued that the marriage was void because Ritchie's divorce from an earlier marriage was granted one day after the marriage ceremony. The validity of this marriage has already been decided by a court of competent jurisdiction and this decision is binding on us. The McCracken Circuit Court found that petitioner and Ritchie "were legally married on April 16, 1937," and decreed that "the bonds of matrimony now existing be cancelled, set aside and held for naught." A Kentucky *17 court of equity found that the parties had been legally married as a condition of its power to divorce them. When a court adjudicates its own jurisdiction, only a direct attack on that decision is permitted and then in a court having the authority to void that decision. [2]
We have often held that where the language of a Federal tax statute depends upon the marital status of the parties, state law controls. Kenneth T. Sullivan, 29 T.C. 71 (1957), *18 affd. 256 F. 2d 664, (C.A. 4, 1958). Marriage, its existence and dissolution, is particularly within the province of the states. Marriner S. Eccles, 19 T.C. 1049 (1953), affd. per curiam 208 F. 2d 796 (C.A. 4, 1953). We are not looking to state law to determine what is income. Federal law determines what is income. Daine v. Commissioner, 168 F. 2d 449 (C.A. 2, 1948), affirming 9 T.C. 47 (1947). But where the Federal statute involved requires a determination as to whether a status of divorce existed, and there being no body of Federal law on this subject, resort to state law is appropriate. Ruth Borax, 40 T.C. 1001 (1963); John J. Untermann, 38 T.C. 93 (1962). [3]
*19 In Ruth Borax, supra, we stated: where as here all the parties in interest reside in the State of New York and a court of that State, having jurisdiction of the parties, has ruled on the marital status of the parties, we think the decision of that court is controlling for our purposes here, and we so conclude. Accordingly, we consider ourselves bound by the adjudication of the McCracken Circuit Court that the parties were legally married and divorced. The decision in Ruth Borax, supra, is important to the instant case from another standpoint. Ruth Borax, supra, established as a test for the treatment of payments as alimony under section 71(a)(1) that the divorce decree either create a valid status of divorce between the parties or at least be a divorce upon which both parties in good faith rely. Louise has argued that the payments she received cannot qualify as alimony because the decree of March 8, 1957, did not create a valid status of divorce between her and George Ritchie. We have already found against her on this point, but assuming, arguendo, that the divorce decree did not create a valid status of divorce, yet Louise actively sought *20 it and sought alimony. Ritchie made the alimony payments required by the decree and Louise accepted them as such. In holding that if the parties rely on a divorce decree, the payments will be treated as alimony for Federal income tax purposes regardless of whether the decree is valid or invalid, Ruth Borax affirmed a test established in Feinberg v. Commissioner, 198 F. 2d 260 (C.A. 3, 1952). There the state of matrimonial domicile did not recognize the validity of an out-of-state divorce. In that case, as here, the taxpayer remarried in reliance on the invalid decree. The court treated the payments as alimony, relying on G.C.M. 25250, 1947-2 C.B. 32. Such memorandum states "There is no doubt that many persons affected by Mexican divorces have acted in good faith in relying on such divorces. * * * To allow deduction * * * in such cases seems to be within the general intent of Congress * * *." The taxpayer, the husband, was allowed a deduction for alimony payments. Considering all of the above, we hold that the payments in issue were alimony. Louise also contends that part of the money she received from Ritchie in 1957 and 1958 is not taxable to her because *21 it qualifies as support payments under section 71(b). Section 71(b) of the Code provides, in pertinent part, as follows: Subsection (a) shall not apply to that part of any payment which the terms of the decree * * * fix, in terms of an amount of money or a part of the payment, as a sum which is payable for the support of minor children of the husband. * * * The terms of the divorce decree of March 8, 1957, provide that Ritchie is to pay the petitioner $465 per month "for the maintenance and support, and alimony of the plaintiff and their daughter, Juanita Ray Ritchie * * * as long as they both remain single." The decree further provides that if the daughter should marry before she reaches 18 years of age, Louise is to be paid $232.50 per month; if Louise should marry after her daughter reaches 18, the payments are to be reduced to $50 per month. Louise reasons that the provision for decreasing the payments to $232.50 in the event the daughter marries before reaching 18 fixes that amount as child support payments within the meaning of section 71(b). We cannot agree. There was a great deal of confusion regarding the proper treatment of payments under decrees comparable to the *22 decree here until the decision in Commissioner v. Lester, 366 U.S. 299 (1961). The Lester decision offers the authoritative interpretation of section 71(b), at p. 303: The agreement must expressly specify or "fix" a sum certain or percentage of the payment for child support before any of the payment is excluded from the wife's income. * * * It is not sufficient that the intent of the parties to allocate a certain percentage to child support can be determined from the terms of the decree. Nor is an automatic reduction in the amounts paid when the children reach their majority or marry sufficient to shift the burden of the tax. The test established by Lester, supra, is not met in this case; the decree of March 8, 1957, does not "fix" a certain amount of the monthly payments to be used for child support. The fact that Ritchie marked certain checks as being for child support is not important. The decision in Lester, supra, does not permit resort to extrinsic evidence to determine whether payments are for support. The terms of the decree itself must fix the amount for support. In the instant case as in Lester the decree provides for an automatic *23 reduction in the payments as the daughter marries or becomes 18. Nevertheless the amounts given to the wife and child were not separately stated nor was any specific sum earmarked for the support of the child only. Louise was under no legal obligation to spend the money solely for the support of her daughter. Cf. William E. Borbonus, 42 T.C. 983 (1964); Eugene F. Emmons, 36 T.C. 728 (1961). It follows that these payments do not qualify as payments for the support of a minor child. Louise argues that even if we find no part of the payments to be for child support, she cannot be taxed on them as alimony because in Kentucky alimony terminates as a matter of law on the remarriage of the wife to someone capable of supporting her. She relies entirely on case law to establish this proposition. Evans v. Evans, 229 Ky. 21, 16 S.W. 2d 485 (1929); Boehmer v. Boehmer, 259 Ky. 69, 82 S.W. 2d 199 (1935); Montgomery v. Offutt, 136 Ky. 157, 123 S.W. 676 (1909); Fisher v. Fisher, 237 Ky. 823, 36 S.W. 2d 635 (1931); Lyon v. Lyon, 243 Ky. 236, 47 S.W. 2d 1072 (1932). The cases cited do not hold that alimony *24 is cut off as a matter of law upon the remarriage of the wife. The cases hold that the wife's right to alimony ends upon her remarriage on proper application to the court to modify or cancel the earlier decree. The cases also deny to the wife the right to sue for alimony accruing after her remarriage. The modified judgment of August 29, 1958, provides "that she is no longer entitled to receive any part of the monthly payment which [the] original judgment provided that she was to draw by reason of her said re-marriage * * *." The court there was interpreting the terms of the original judgment, it did not rule or even suggest that as a matter of law her right to alimony terminated on her remarriage. Neither the Kentucky cases nor the modified judgment in this case establish the principle that the right to alimony automatically ends upon the remarriage of the wife. Neither the decree of March 8, 1957, nor the modified judgment of August 29, 1958, specifically denominated the payments made after petitioner's remarriage as being either alimony or child support payments. Assuming, arguendo, that a Kentucky court would have declared these payments to be for child support, it would not *25 be controlling on us. We are not bound by a state court characterization of payments in deciding their Federal income tax consequences. Daine v. Commissioner, 168 F. 2d 449, (C.A. 2, 1948); Bardwell v. Commissioner, 318 F. 2d 786 (C.A. 10, 1963). Louise does not deny that she could have sued for these monthly payments of $232.50 in a Kentucky court. Ritchie made these payments in discharge of a legal duty incurred by the marital or family relationship. When this is true, Federal law determines whether the money is taxable as alimony. Bardwell v. Commissioner, supra. In the Bardwell case payments were held taxable as alimony even though state law did not consider them to be alimony. Since the husband paid the money pursuant to a duty created by the marital or family relationship, the court found the payments to be alimony, saying: We are not, however, bound by the labels which the parties attach to the payments in their agreement, * * * any more than we are bound by the rules of state law. [4] * * * On the need for uniform tax treatment of alimony payments the court said: It is clear that one of the purposes intended by Congress in initially *26 enacting this provision was that there would be uniformity of tax treatment for situations arising in the several states. [5] * * * See also William E. Borbonus, supra, where a state rule of law was rejected in the interests of uniformity. We hold that the payments George Ritchie made to petitioner, Louise Ross, in 1957 and 1958 are includable as alimony in her taxable gross income for those years. No part of these payments is deductible as child support payments within the meaning of section 71(b). Issue 3 Both parties are agreed that section 151(b) [6] of the Code determines the right of the petitioner, Walter Ross, Jr., to an exemption of $600 for his wife, Louise Ross, for 1957 and 1958. We have found that petitioner, Louise Ross, had gross income for those years, and it follows that petitioner, Walter Ross, Jr., is not entitled to the exemptions for her which he claimed. *27 Issue 4 Petitioner, Walter Ross, Jr., claims an exemption of $600 for his son Robert Ross, suggesting that he furnished more than one-half of his son's support for 1957. Respondent argues that the dependency claim cannot be allowed on the grounds that petitioner did not establish either the total amount of his son's support during the year or that he contributed more than half of such support. We agree with the respondent. Section 151(e)(1) [7] of the Code provides for an exemption of $600 for each dependent whose gross income is less than $600 for the taxable year, or who is a child of the taxpayer under 19 years of age or who is a student. A dependent is defined by section 152 as an individual over half of whose support for the taxable year is furnished by the taxpayer. *28 From January through September 26, 1957, petitioner furnished a house and $50 per week to his wife and daughter and son, Robert Ross. For the remainder of the year petitioner paid $40 a week for the support of his wife and daughter. To be entitled to this exemption the petitioner must show the total amount of support received by the boy and prove that he contributed more than half of that amount. Bernard C. Rivers, 33 T.C. 935; Tressler v. Commissioner, 206 F. 2d 538 (C.A. 4, 1953). The petitioner did not even offer an approximation of the boy's total support for the year. There was no testimony from the son on his earnings for 1957, nor was the petitioner, Walter, able to relate from personal knowledge how the son spent the last 3 months of 1957. Petitioner, Walter, has not established his right to this exemption. Issue 5 Petitioner Louise Ross claims an interest deduction under section 163(a) [8] in connection with certain payments made on a 1957 Buick automobile. She computes the amount of interest in accordance with the formula set out in section 163(b) of the Code. Respondent denies this deduction because the carrying charges are not stated separately *29 in the contract and suggests that the formula provided for in section 163(b) is not available to the petitioner unless the carrying charges and the price of the article are stated separately. We agree with the respondent. *30 Under section 23(b) of the 1939 Code [9] a taxpayer was allowed a deduction for all interest paid within the taxable year. On purchases of personal property this was strictly enforced to mean that the interest charges must be stated as a separate part of the finance charges. The result was that many people were paying interest they could not deduct because the interest was lumped together with the other finance charges. Section 163(b) of the 1954 Code was enacted to give relief to installment buyers. That section provides for a formula for computing interest when the "carrying charges are separately stated but the interest charges cannot be ascertained." The Committee Reports indicate that such a provision was necessary because sellers "frequently do not state the interest *31 charge separately [in order] to avoid emphasizing the amount of * * * interest charged * * *." H. Rept. No. 1337, 83d Cong., 2d Sess., p. 20 (1954). Under the 1939 Code taxpayers were being denied interest deductions because it was feared that carrying charges might include charges other than for the use of money. The purpose of the change in the law was to provide a formula so that interest could be deducted even though lumped together with other finance charges. Section 163(b) was not meant to apply to installment contracts where the total price was not broken down between the purchase price of the article and the carrying charges. Petitioner, Louise, has only proved the total price of the car; she offered no allocation between the purchase price and the carrying charges. She did not even show the difference between the cash price and the time price of the car. Petitioner, Louise, has not cited us any cases or revenue ruling supporting her interpretation of the section. Accordingly, she is not entitled to any interest deduction under section 163(a). Decisions will be entered under Rule 50. Footnotes
1. All references are to the Internal Revenue Code of 1954 unless otherwise stated.↩
2. Recitals of jurisdictional facts in a judgment or decree of a Kentucky court are treated as conclusive in collateral proceedings in that state, as against attacks based upon evidence outside the record. Although they may be refuted by such evidence in a direct attack upon the judgment, they are otherwise binding upon parties and courts alike. Newhall v. Mahan, 245 Ky. 626, 54 S.W. 2d 26 (1932); Burchell v. Hammons, 289 S.W. 2d 737 (Ky. 1956). Upon the present state of the record, we must accept as binding the recital in the decree that Louise and Ritchie had been validly married. See also Statter v. Statter, 2 N.Y. 2d 668, 143 N.E. 2d 10 (1957); Wenzel v. Wenzel, 283 S.W. 2d 882↩ (Mo.App. 1955).
3. In cases like this we have often made an independent examination of state law to determine the existence of the marriage relation. In some cases we have decided whether two people were validly married without the benefit of a formal declaration on the question by the state of matrimonial domicile. Estate of Daniel Buckley, 37 T.C. 664 (1962); John J. Untermann, 38 T.C. 93 (1962); Albert Gersten, 28 T.C. 756↩ (1957), But no case has been called to our attention, nor has our research disclosed one where we disregarded or contravened an adjudication of the marital status by a state having jurisdiction of all the parties.
4. Bardwell v. Commissioner, 318 F. 2d 786, at 789↩. 5. Ibid, at 789.↩
6. SEC. 151. ALLOWANCE OF DEDUCTIONS FOR PERSONAL EXEMPTIONS. (b) Taxpayer and Spouse. - An exemption of $600 for the taxpayer; and an additional exemption of $600 for the spouse of the taxpayer if a separate return is made by the taxpayer, and if the spouse, for the calendar year in which the taxable year of the taxpayer begins, has no gross income and is not the dependent of another taxpayer.↩
7. SEC. 151. ALLOWANCE OF DEDUCTIONS FOR PERSONAL EXEMPTIONS. (e) Additional Exemption for Dependents. - (1) In General. - An exemption of $600 for each dependent (as defined in section 152) - (A) whose gross income for the calendar year in which the taxable year of the taxpayer begins is less than $600, or (B) who is a child of the taxpayer and who (i) has not attained the age of 19 at the close of the calendar year in which the taxable year of the taxpayer begins, or (ii) is a student.↩
8. SEC. 163. INTEREST. (a) General Rule. - There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness. (b) Installment Purchases Where Interest Charge Is Not Separately Stated. - (1) General Rule. - If personal property is purchased under a contract - (A) which provides that payment of part or all of the purchase price is to be made in installments, and (B) in which carrying charges are separately stated but the interest charge cannot be ascertained, then the payments made during the taxable year under the contract shall be treated for purposes of this section as if they included interest equal to 6 percent of the average unpaid balance under the contract during the taxable year. For purposes of the preceding sentence, the average unpaid balance is the sum of the unpaid balance outstanding on the first day of each month beginning during the taxable year, divided by 12. (2) Limitation. - In the case of any contract to which paragraph (1) applies, the amount treated as interest for any taxable year shall not exceed the aggregate carrying charges which are properly attributable to such taxable year.↩
9. SEC. 23. DEDUCTIONS FROM GROSS INCOME. (b) Interest. - All interest paid or accrued within the taxable year on indebtedness, except on indebtedness incurred or continued to purchase or carry obligations (other than obligations of the United States issued after September 24, 1917, and originally subscribed for by the taxpayer) the interest upon which is wholly exempt from the taxes imposed by this chapter.↩