## RUTH BORAX, ET AL.,[1] PETITIONERS, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 92309, 92461, 92462. Filed September 20, 1963.

*Thomas Epstein,* for the petitioner in Docket No. 92309.

*Julius G. Hirsch,* for the petitioners in Docket Nos. 92461 and 92462.

*Arthur S. O'Neill, Jr.,* for the respondent.

### OPINION

DRENNEN, *Judge:* In these proceedings, which were consolidated for briefing and opinion, respondent determined deficiencies in income tax as follows:

| Docket No. | Taxpayer | Year | Deficiency |
|---|---|---|---|
| 92309 | Ruth Borax | 1952 | $1,888.30 |
| | | 1953 | 1,888.30 |
| | | 1954 | 1,688.50 |
| | | 1965 | 1,688.50 |
| | | 1957 | 1,688.50 |
| 92461 | Estate of Herman Borax, Deceased, Hermine H. Borax, Louis Borax, and Benjamin Borax, Executors.[2] | 1952 | 13,132.46 |
| | | 1953 | 13,191.42 |
| | | 1954 | 11,686.02 |
| | | 1955 | 12,493.89 |
| | | 1957 | 10,928.95 |
| 92462 | Hermine Borax | 1952 | 13,132.46 |
| | | 1953 | 13,191.42 |
| | | 1954 | 11,686.02 |
| | | 1955 | 12,493.89 |
| | | 1957 | 10,928.95 |

---

[1] Proceedings of the following petitioners are consolidated herewith: Estate of Herman Borax, Deceased, Hermine H. Borax, Louis Borax, and Benjamin Borax, Executors, Docket No. 92461, and Hermine Borax, Docket No. 92462.

[2] Herman Borax, who filed the petition herein, died during the pendency of these proceedings. His executors have been substituted as parties in his stead. For simplicity references shall be made herein to Herman.

The issues for decision are:

(1) Whether there is includable in the gross income of Ruth Borax (hereafter called Ruth) amounts received by her in 1952, 1952, 1954, 1955, and 1957 from Herman Borax (hereafter called Herman), and conversely whether Herman is entitled to deductions for these amounts in computing his net or taxable income for those years.

(2) Whether Herman and Hermine Borax (hereafter called Hermine) were entitled to file joint Federal income tax returns for the taxable years 1952, 1953, 1954, 1955, and 1957.

(3) Whether, in computing the joint tax liability of Herman and Hermine for the taxable years 1952, 1953, 1954, 1955, and 1957, there are to be allowed exemptions for certain dependents, relations of Hermine.[3]

The case was submitted with all facts stipulated under Rule 30 of the Rules of Practice of this Court, and the stipulated facts are found accordingly.

Herman and Hermine filed joint Federal income tax returns for the years 1952, 1953, 1954, 1955, and 1957 with the district director of internal revenue, Upper Manhattan District, New York, N.Y. Ruth filed no Federal income tax returns for those years.

Herman and Ruth were married on November 4, 1935, in New York City, where they lived together as husband and wife until about March 14, 1946, when they separated by mutual consent. A son, James, was born to them in 1937. On March 14, 1946, Herman and Ruth executed a written separation agreement providing, *inter alia*, as follows:

4. That, while both parties hereto shall remain alive, and so long as the Second Party [Ruth] shall fully keep, observe and perform the terms, provisions, covenants and conditions hereof to be kept, observed and performed by her, and so long as the marriage of the parties hereto shall not be dissolved by any order, judgment or decree entered against the Second Party, the First Party shall pay to the Second Party, as hereinbefore provided, the sum of Five hundred and seventy-five ($575.) Dollars per month, on the 15th day of each and every month, beginning with the month of March, 1946, as full, fair and reasonable provision for the Second Party and for the maintenance, education and support of said child, except as aforementioned, and in addition thereto, the First Party hereby gives and grants to the Second Party, so long as the Second Party shall be entitled to receive such allowance, the right to use all household furniture, furnishings and equipment heretofore used by the parties hereto in the apartment at No. 40 West 77th Street, Borough of Manhattan, City of New York, which may belong to the First Party, but not including, however, any wearing apparel, or other personal articles used by the First Party alone.

5. That the foregoing payments shall be in full satisfaction and discharge of any and all alimony, whether permanent or temporary, which the Second Party may claim, or be awarded, in any action that may hereafter be brought by either party against the other.

---

[3] This is dependent on the conclusion reached on Issue 2. Although the notice of deficiency disallowed an exemption for James, the son of Herman and Ruth, respondent concedes that Herman is entitled to an exemption for James for the years 1955 and 1957.

On or about November 22, 1946, as the result of a stipulation filed by Ruth and Herman, the Supreme Court of New York entered a consent decree whereby the separation agreement was reformed to increase Herman's payments to Ruth from $6,900 to $8,550 per year.

On or about August 7, 1952, Herman procured a decree of divorce in Mexico, city of Juarez, Chihuahua. The decree recited in part:[4]

CONSIDERING:.—* * * THIRD:—It having been stated in the complaint that there is one son of the marriage, named JAMES STEPHEN BORAX who is with its mother, and according to the opinion of the Agent for the State's Attorney's Office, said son shall remain under the same condition as he now is in, and since there exists and agreement of seperation signed by and between the parties, this sentence shall not alter such*al* particulars. * * * Now thereby * * * it is resolved:— FIRST.—The marriage of Herman Borax and Ruth Haber Borax * * * and all its legal consequences, is hereby dissolved, * * * THIRD.— The son of the marriage James Stephen Borax shall remain under the care and custody of the mother. * * *

Herman went through a marriage ceremony with Hermine in Juarez, Mexico, on or about August 21, 1952. Herman and Hermine went through a second marriage ceremony in New Haven, Conn., on or about August 29, 1952, after which they resided together in New York City. At all times material hereto Herman and Hermine were residents of New York State.

As the result of an action for declaratory judgment brought by Ruth, the Supreme Court of New York rendered an opinion on January 28, 1953, in which it stated that it would "declare the validity of the prior marriage [between Herman and Ruth] and the invalidity of the purported divorce [the Mexican decree obtained by Herman]." In accordance with the opinion, the Supreme Court of New York entered an order on or about February 3, 1953, by which it adjudged and decreed:

(1) that the plaintiff, Ruth Haber Borax, is the lawful wife of the defendant Herman Borax;

(2) that defendants Herman Borax and Hermine Hermilee are not husband and wife;

(3) that the decree of divorce obtained by the defendant Herman Borax against plaintiff, in the First Civil Court of Bravos District, in the City of Juarez, Chihuahua, Mexico, is invalid and of no force or effect in law.

During the period in question Herman paid to Ruth the amount of $8,550 per year as provided by the separation agreement as reformed, and he claimed deductions for these amounts on his returns for 1952, 1953, 1954, 1955, and 1957. Ruth filed no income tax returns for those years. Herman died on or about October 2, 1961.

---

[4] The quoted portions are the only references made in the decree to the separation agreement and to James, except formal recitals of their existence in the beginning of the decree.

*Issue 1*

In his notices of deficiencies respondent determined that the payments made by Herman to Ruth were both taxable to Ruth and nondeductible by Herman. In his opening statement counsel for respondent stated that these were alternative positions taken to protect the revenue, and on brief he sides with Ruth, arguing primarily that the payments were not includable in Ruth's income and were not deductible by Herman.

If the amounts which Herman paid Ruth under the separation agreement are includable in her gross income they are deductible by him. Sec. 23(u), I.R.C. 1939; sec. 215, I.R.C. 1954. Whether the amounts constitute gross income to Ruth is to be determined under the provisions of section 22(k), I.R.C. 1939, and of its counterpart, section 71, I.R.C. 1954. For present purposes, these provisions are the same.[5] Section 71(a)(1) provides in material part as follows:

(1) DECREE OF DIVORCE OR SEPARATE MAINTENANCE.—If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.

The purpose for which section 23(u) of the 1939 Code was enacted was stated in H. Rept. No. 2223, 77th Cong., 2d Sess., p. 72 (1942), 1942-2 C.B. 372, 427, to be "in order to provide in certain cases a new income tax treatment for payments in the nature of or in lieu of alimony or an allowance for support as between divorced or legally separated spouses," and in *Grant* v. *Commissioner*, 209 F. 2d 430, 433 (C.A. 2, 1953), affirming 18 T.C. 1013 (1952), to be "to lessen the tax burden of a divorced husband by allowing him to deduct from his gross income, in computing his taxable net income, periodic alimony payments." The object of the statute thus appears to have been to give relief to the husband. On the other hand, the issue is primarily between Ruth and Herman and it is probable that the equities are in favor of Ruth who presumably entered into the separation agreement and agreed to the amounts provided for her support with the thought that the payments would not be taxable to her.[6] To hold that the

---

[5] The written separation agreement here involved having been executed prior to the enactment of the 1954 Code, sec. 71(a)(2) of that Code does not apply.

[6] Recognition of this factor was given by the Senate Finance Committee when it amended the House version of what is now sec. 71(a)(2) of the 1954 Code to make that paragraph, which makes periodic payments received by a wife taxable to her regardless of a decree of divorce or separate maintenance, applicable only to contracts entered into by husband and wife after the effective date of the statute. S. Rept. No. 1622, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess., p. 10 (1954) ; but cf. *Holt* v. *Commissioner,* 226 F. 2d 757 (C.A. 2. 1955), reversing 23 T.C. 469 (1954).

payments were deductible by Herman and taxable to Ruth because of the Mexican divorce would be to permit Herman to unilaterally change the net effect of the separation agreement. But in any event we feel compelled under the law as written to decide this issue in favor of Ruth and against Herman.

In order that the amounts be held includable in Ruth's income, and deductible by Herman, they must have been received by Ruth in discharge of a legal obligation imposed on Herman by a decree of divorce or of separate maintenance under which Herman and Ruth were divorced or legally separated, or incurred by Herman under a written instrument incident to such a divorce or legal separation. Herman does not contend that the payments were made under a decree of separate maintenance or a written instrument incident thereto. This Court held in *Herman Borax*, 30 T.C. 817 (1958), that the judgment of the New York court of November 22, 1946, increasing the payments from $6,900 to $8,550 per year, was not a decree of separate maintenance. Nor does he contend that the payments were made in discharge of an obligation imposed upon him under a decree of divorce. He recognizes that the Mexican divorce decree did not impose on him an obligation to make the payments. He does contend, however, that the payments were made by him and received by Ruth in discharge of an obligation imposed on him under a written instrument incident to the Mexican divorce, and are therefore taxable to Ruth and deductible by him.

The Mexican decree did not formally incorporate the terms of the agreement or order Herman to make payments in accordance with it. The decree merely stated with ambiguity that the judgment should not alter the agreement. But the failure to incorporate the agreement or to refer to its specific terms is not fatal to Herman's case. The divorce agreement need not be incorporated into the divorce decree to satisfy the requirements of the statute that the payments be made under a written instrument incident to the divorce. *Alice L. Heath*, 30 T.C. 339 (1958), affirmed per curiam 265 F. 2d 662 (C.A. 2, 1959), certiorari denied 361 U.S. 824 (1959); *Raoul Walsh*, 21 T.C. 1063 (1954); *Holt* v. *Commissioner*, 226 F. 2d 757 (C.A. 2, 1955), reversing 23 T.C. 469 (1954), certiorari denied 350 U.S. 982 (1956); *Newton* v. *Pedrick*, 212 F. 2d 357 (C.A. 2, 1954); *Lerner* v. *Commissioner*, 195 F. 2d 296 (C.A. 2, 1952), reversing 15 T.C. 379 (1950). Moreover, it is not necessary to Herman's case that Herman and Ruth anticipated divorce when they entered into the agreement. *Holt* v. *Commissioner*, *supra; Feinberg* v. *Commissioner*, 198 F. 2d 260 (C.A. 3, 1952), reversing 16 T.C. 1485 (1951); or that there be mutuality of intention on the part of Herman and Ruth that the agreement be the basis for alimony in a divorce decree. *Holt* v. *Commissioner*, *supra*. This Court has accepted the principle enunciated by the Court of Appeals for the

Second Circuit in the above cases and by other Courts of Appeals that the words "incident to such divorce" refer to the *status* of divorce rather than merely the *decree* of divorce and that where there is a legal obligation to support, evidenced by a written instrument, which survives the dissolution of the marital relationship, periodic payments made thereunder are includable in the income of the wife-recipient even though the agreement is not mentioned in the decree and even though the parties may not have contemplated divorce when the agreement was made. *Helen Stewart Cramer*, 36 T.C. 1136 (1961). As stated in *Lerner* v. *Commissioner*, *supra* at 298, "the term 'written instrument incident to such divorce' was designed, we think, only to insure adequate proof of the existence of the obligation when divorce has occurred."

However, the statute applicable here requires that there be some judicial sanction in the form of a decree of divorce or separate maintenance to make the payments taxable to the wife and deductible by the husband. *Charles L. Brown*, 7 T.C. 715 (1946); *Estate of Daniel Buckley*, 37 T.C. 664 (1962); *Smith* v. *Commissioner*, 168 F. 2d 446 (C.A. 2, 1948), affirming a Memorandum Opinion of this Court; *Daine* v. *Commissioner*, 168 F. 2d 449 (C.A. 2, 1948), affirming 9 T.C. 47 (1947). And we agree with Ruth and respondent that in order for the payments to fall within the meaning of the phrase "written instrument incident to such divorce," absent imposition thereof by a divorce decree the obligation to pay must, under the provisions of the written instrument which imposes it, survive the divorce; also that the statute contemplates a decree of divorce which creates a valid status of divorce between the parties or at least a decree upon which both parties in good faith rely; and that neither is shown to be present here.

Paragraph 4 of the written separation agreement provides that Herman's obligation to make payments to Ruth shall continue "so long as the marriage of the parties hereto shall not be dissolved by any order, judgment or decree entered against the Second Party [Ruth]." If the Mexican divorce was valid, that is exactly what happened—the marriage was dissolved by a decree entered against Ruth. The divorce decree did not order any further payments and it would seem that Herman's obligation to pay would have terminated with the entry of the decree, and that subsequent payments by Herman were voluntary. Herman contends that paragraph 5 of the written separation agreement, which provides that the "foregoing" payments shall be in full satisfaction of all alimony which Ruth may claim or be awarded in any action brought by either party against the other, imposed an obligation on Herman to continue the payments beyond the dissolution of the marriage and this obligation survived the divorce decree. He argues that paragraph 4 contemplated that his payments

would cease if he obtained a divorce in New York, but paragraph 5 provided that they would continue in lieu of alimony if a divorce were obtained elsewhere by either party. It is argued that these are probably standard provisions in settlement agreements in New York State. But whatever the reason for the ambiguity in the agreement, we cannot find from the stipulated facts of record that Herman's obligation to make the payments survived the Mexican divorce decree if it validly dissolved the marriage, which Herman is not in a position to question. The obligation was terminated by the decree under paragraph 4; and under paragraph 5 Ruth neither claimed nor was awarded any alimony in the Mexican divorce proceedings of which the subsequent payments could be in satisfaction.

On the other hand, we do not believe the Mexican divorce decree was valid to create a status of divorce between Herman and Ruth to which the written agreement could be incident. At all times pertinent hereto New York was the residence and domicile of both Herman and Ruth, as it was of Hermine subsequent to her purported marriage to Herman. The Supreme Court of New York specifically held, subsequent to the Mexican divorce and the remarriage of Herman and Hermine, that Ruth was the lawful wife of Herman, that Herman and Hermine were not husband and wife, and that the Mexican decree of divorce was invalid and of no force or effect in law.

We recognize and are fully in accord with the principle that the Federal law will control when there is a question of the construction of a Federal statute, *Lyeth* v. *Hoey*, 305 U.S. 188 (1938), and that Federal tax statutes are not to be frustrated by State laws, *Commissioner* v. *Tower*, 327 U.S. 280 (1946). But here we do not look to State law to construe the Federal statute. The statute, as interpreted by the Federal courts, requires that the written instrument be incident to the decree of divorce or, in this case, the status of divorce. There being no body of Federal law from which we can determine whether the status of divorce existed, we must look elsewhere. This Court has often held that where the language of a Federal tax statute depends on the marriage status we will look to State law for that purpose. Marriage, its existence and dissolution, is particularly within the province of the States. *Marriner S. Eccles*, 19 T.C. 1049 (1953), affirmed per curiam 208 F. 2d 796 (C.A. 4, 1953); *Albert Gersten*, 28 T.C. 756 (1957), affirmed on this issue 267 F. 2d 195 (C.A. 9, 1959); *John J. Untermann*, 38 T.C. 93 (1962). The reason for looking to State law here is to aid in determining the status of divorce as required by the Federal statute; and we cannot see that doing so frustrates any tax policy of the Congress in this situation.

The only question remaining then is, to what local forum do we look for determination of the marital status of Ruth and Herman? Ruth and respondent claim that we should look to New York wherein both

parties resided at all times pertinent hereto.  Herman insists that we should look to the laws of Mexico wherein the divorce was granted to determine their marital status—but gives us no valid reason for doing so except that it might lead to a more uniform application of this statute.  If both parties were clearly subject to the jurisdiction of the Mexican court in the divorce proceeding and either participated or acquiesced therein, and relied thereon, this argument might bear weight.  See *Lily R. Reighley*, 17 T.C. 344 (1951).  But such does not appear from the record here.  Furthermore, where as here all the parties in interest reside in the State of New York and a court of that State, having jurisdiction of the parties, has ruled on the marital status of the parties, we think the decision of that court is controlling for our purposes here, and we so conclude.

We think this case is distinguishable from G.C.M. 25250, 1947-2 C.B. 32, relied upon by Herman, because of the difference in circumstances.  It seems clear that that ruling was based primarily upon the fact that both parties had relied in good faith on the validity of the Mexican divorce.  Such does not appear to be the case here.  So far as we can tell from the evidence submitted, Ruth was not aware of the fact that Herman was seeking a divorce in Mexico and she in no way participated in obtaining that divorce.  When she found out about it she brought proceedings in the jurisdiction within which both she and Herman resided to have the divorce declared invalid and affirm the fact that she was still married to Herman.  It is clear from *Estate of Daniel Buckley*, *supra*, that had she gone to Mexico and had the divorce declared invalid, the payments received by her from Herman would not have been taxable to her.  We do not think that would be required to arrive at the same result under the statutes here involved when a court of the State wherein both parties resided had so declared.

We recognize that this conclusion would appear at first blush to be inconsistent with the conclusion of the Court of Appeals for the Third Circuit in *Feinberg* v. *Commissioner*, *supra* at 263, wherein that court said, "The mere fact that the marital domicile of the parties did not recognize the Florida divorce does not render it a nullity for Federal income tax purposes."  We do not disagree with that broad general statement but we do not think it requires a contrary conclusion here.  In *Feinberg* the husband and his second wife were residing in New Jersey while the declaratory judgment declaring the Florida decree invalid was issued by a New York court, New York being the State wherein the first wife resided.  It also appears that the separation agreement, entered into by the parties just 6 weeks before the husband instituted the Florida divorce proceedings, provided that the payments should continue so long as both parties remained alive and bound both parties to have the provisions of the agreement incorporated in any divorce decree sought by either party at any future

date in any jurisdiction. In reaching its conclusion the Court of Appeals relied heavily on G.C.M. 25250, *supra*. It must therefore have felt that both parties were relying in good faith on the Florida divorce decree, which we do not find to be the situation here.

We conclude that the payments made by Herman to Ruth during the years here involved were not periodic payments received by Ruth in discharge of a legal obligation imposed upon or incurred by Herman under a decree of divorce or separate maintenance or under a written instrument incident to a divorce within the meaning of the statute and that the payments are not includable in the gross income of Ruth and are not deductible by Herman.

### *Issue 2*

The second issue is whether Herman and Hermine were entitled to file joint returns for the years involved. Section 51(b) of the 1939 Code and section 6013 of the 1954 Code both provide that a husband and wife may file a single joint return of their income. Much of what has been said above with respect to the marital status of Ruth and Herman is pertinent here. The question here is whether Herman and Hermine were husband and wife within the meaning of the above statutes and that in turn would normally depend on whether Herman and Ruth were legally divorced. In *Albert Gersten, supra*, we looked to the law of California, which was the residence and domicile of both parties, to determine if a valid marriage existed between them and found from an interpretation of the California law that the divorce obtained by the husband in Mexico was of no force and effect in California and, therefore, the marriage of the husband to a second wife was invalid and they were not entitled to file joint returns. In *Estate of Daniel Buckley, supra*, we looked first to the laws of Virginia wherein the husband and second wife had been married to determine whether that marriage was valid but also looked to the laws of New York which was the domicile of the husband and wife to hold that they were not legally married and could not file joint returns. Likewise, in *John J. Untermann, supra*, we looked to the laws of New Jersey wherein the parties resided to determine whether the husband who had obtained a Mexican divorce was legally married to his second wife in a marriage ceremony which took place in Connecticut, and finding that New Jersey would have recognized the continuing marital status of the husband and his first wife, we found that the husband and his second wife were not legally married and could not file a joint return. Here we have a declaratory judgment decree of the Supreme Court of New York, being the State wherein all the parties resided, which declared not only that the Mexican divorce was invalid and that Ruth was the lawful wife of Herman but also that Herman and Hermine are not husband and

wife. We think this is conclusive against the right of Herman and Hermine to file joint returns.

Herman contends that we should look to the laws of Connecticut and the laws of Mexico wherein his two marriages to Hermine were consummated to determine the marital status of himself and Hermine. He cites no authority for concluding that under the laws of Connecticut his marriage to Hermine consummated in that State would be held valid.[7]

Herman claims that inasmuch as the Mexican divorce was valid in Mexico his marriage to Hermine in Mexico would also be valid and that this should control for purposes of determining whether he and Hermine may file a joint return. We might assume that the Mexican marriage would be considered valid in Mexico simply because the Mexican divorce had not been attacked in Mexico but Herman cites no authority requiring us to look to the marital status of the parties under the laws of Mexico in determining this Federal tax question, other than the general principle that Federal tax questions should not be controlled by varying State laws. As stated above, this is not a matter of construction of the Federal statute but a question of determining the marital status of the parties which we have repeatedly held is a matter peculiarly within the province of the States wherein the parties reside. *Marriner S. Eccles, supra; Albert Gersten, supra.*

Herman and Hermine were not husband and wife under the laws of their residence or domicile; consequently they were not entitled to file joint returns for the years here involved.

## *Issue 3*

The third issue concerns the dependency exemptions to which Herman and Hermine were entitled, and the parties are in agreement that this depends on our conclusion under the second issue. Having determined that Herman and Hermine were not husband and wife and were not entitled to file joint returns, it follows that Herman is not entitled to a dependency exemption for Laurence and Bruce, the minor children of Hermine, nor for Rea and William Goldfarb, the parents of Hermine. The parties have stipulated that Herman is entitled to a dependency exemption for James, the son of Herman and Ruth, for the years 1955 and 1957.

*Decisions will be entered under Rule 50.*

---

[7] It is quite doubtful that the marriage would be considered legal in Connecticut. See John S. Gilman, "Extraterritorial Divorce," 23 Conn. Bar J. (Sept. 1949). See also *John J. Untermann,* 38 T.C. 93 (1962).