HAROLD K. LEE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

LOUISE GEISE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 708-73, 709-73.     Filed July 8, 1975.

*Charles A. Lane,* for the petitioners.
*J. E. Britt,* for the respondent.

### OPINION

HALL, *Judge:* Respondent determined the following deficiencies against petitioners Harold K. Lee and Louise Geise:

| Year | Harold | Louise |
|------|--------|--------|
| 1967 | $1,042 | $26,165 |
| 1968 | 952 | 12,135 |
| 1969 | 858 | [2] 16,416 |
| 1970 | 226 | 21,288 |
| Total | 3,078 | 76,004 |

The sole question is whether petitioners were "husband and wife," within the meaning of section 6013(a),[1] entitled to file

---

[1] All section references are to the Internal Revenue Code of 1954, as in effect during the years in issue, unless otherwise indicated.

[2] The parties have agreed that the correct amount of the deficiency is $16,616, rather than $16,416.

joint Federal income tax returns for the years 1967 through 1970.

All the facts have been stipulated by the parties.

Petitioners resided in Hawaii when they filed their petitions. During the years in issue they resided in Los Angeles, Calif. They filed a joint income tax return for 1967 with the District Director in Los Angeles. For the years 1968, 1969, and 1970, they filed joint returns with the Internal Revenue Service Center at Ogden, Utah.

On October 7, 1961, Harold K. Lee (Harold) married Doris G. Lee (Doris). They resided continuously in California during their marriage. On November 21, 1966, Harold commenced divorce proceedings against Doris in the Court of First Instance in the District of Ocampo, Tlaxcala, Mexico. Pursuant to this proceeding, the Mexican court issued a purported divorce decree on December 5, 1966. Doris was not notified of the divorce proceedings, did not appear in the Mexican court, and did not receive notice of the issuance of the Mexican decree.

On October 1, 1967, Harold and Louise Geise (Louise) went through a marriage ceremony in Las Vegas, Nev., before a justice of the peace.

On November 20, 1967, Harold filed a complaint for divorce against Doris in the Superior Court of the State of California for the County of Los Angeles. In his complaint Harold alleged that he was then and had been for more than 1 year a resident of Los Angeles County and that he was Doris' husband. His complaint stated nothing about the Mexican divorce or his subsequent marriage to Louise.

On June 7, 1968, Doris filed a complaint for divorce against Harold in the same California court, charging Harold with adultery with Louise, who was named correspondent. Doris also alleged that she and Harold were married and that she was, and for more than a year had been, a resident of Los Angeles County. In his answer to Doris' complaint Harold made no allegations concerning his Mexican divorce or his marriage to Louise. Louise in her answer stated that when she "learned that the purported divorce which defendant [Harold] alleged he had obtained in Mexico was in fact invalid, co-respondent [sic] [Louise] ceased cohabiting with the defendant," and that she "at all times * * * acted in good faith in the belief that the defendant had in fact obtained a lawful divorce from plaintiff, Doris G. Lee."

In their California divorce proceedings neither Harold nor Doris relied upon, nor used as a defense, Harold's Mexican divorce. Harold and Doris entered into a stipulation permitting Doris to proceed against Harold by default, and the suit against Louise was dismissed. On July 21, 1971, the California court entered a final decree of divorce.

During the years 1967 through 1970 Harold was married to Doris and not married to Louise. Harold and Doris were residents of California continuously from 1961 until their divorce in 1971.

Section 6013 grants a "husband and wife" the right to file a joint return. Subsection (d)(2) of section 6013 states that "an individual who is legally separated from his spouse under a decree of divorce or of separate maintenance shall not be considered as married." The Code does not otherwise define the terms "husband" and "wife."

Respondent contends that petitioners Harold and Louise were not entitled to file joint returns for the years in issue because they were not legally married.

Petitioners argue: (1) That the Mexican decree of divorce, although not entitled to full faith and credit under article IV of the United States Constitution, is entitled to comity, and as such is presumptively valid until proven invalid, that Harold's allegation in his November 20, 1967, California divorce complaint that he was then and had been for more than 1 year a California resident was a mere "standard allegation" of his attorney in a "form book complaint" and not evidence of the truth of the matter stated, and that there being no other evidence of his lack of Mexican domiciliary status on November 21, 1966, the validity of the Mexican divorce has not been disproved; (2) that respondent, through published rulings, has established a policy that the validity of Mexican divorces will not be challenged for tax purposes unless subsequently declared invalid by a court of competent jurisdiction, and, there being no declaration of invalidity in this case, respondent is estopped to deny the validity of petitioners' marriage for income tax purposes; and (3) that a Mexican divorce which is valid in Mexico will be recognized for income tax purposes even if declared invalid by a court in the State of residence of the parties to the divorce.

First we shall consider petitioner's second argument, that respondent is estopped to deny the validity of petitioners'

Mexican divorce as a result of having issued Rev. Rul. 67-442, 1967-2 C.B. 65, which states in part:

The Internal Revenue Service generally will not question for Federal income tax purposes the validity of any divorce decree until a court of competent jurisdiction declares the divorce to be invalid. However, where a state court, in a proceeding in which there is personal jurisdiction of the parties or jurisdiction of the subject matter of the action, declares the prior divorce to be invalid, the Service will usually follow the later court decision rather than the divorce decree for Federal income tax purposes for such years as may not be barred by the statute of limitations. In this regard the Service will not follow the decisions in *Estate of Herman Borax* v. *Commissioner,* 349 F. 2d 666 (1965), certiorari denied, 383 U.S. 935 (1966), and *Harold E. Wondsel* v. *Commissioner,* 350 F. 2d 339 (1965), certiorari denied, 383 U.S. 935 (1966).

and Rev. Rul. 71-390, 1971-2 C.B. 82, which states in part:

In the instant case a court of competent jurisdiction has not declared the divorce decree to be invalid nor has the validity of the support order been judicially questioned. Accordingly, under Revenue Ruling 67-442 the Mexican divorce may not be questioned and the husband and his first wife are considered divorced for Federal income tax purposes.

The classical elements of estoppel are (1) misrepresentation or concealment of a material fact, which is unknown to the party claiming the benefit of estoppel, and (2) detrimental action in reliance on such misrepresented or concealed material fact by the party claiming the benefit of estoppel. *United States v. S. F. Scott & Sons,* 69 F. 2d 728 (1st Cir. 1934); *Tide Water Oil Co.,* 29 B.T.A. 1208, 1218-1219 (1934).

First, we note that there are no facts in the records of these cases upon which we could base a finding that petitioners were even aware of, let alone relying on, any published rulings of respondent when they married. Petitioners requested no such finding. The element of detrimental reliance is not present in these cases, even were respondent otherwise subject to estoppel by the mere issuance of a ruling.

Second, petitioners themselves did not rely on the Mexican divorce as valid in the subsequent California divorce action. Louise, in fact, alleged it was invalid in her answer as correspondent, and on November 20, 1967, Harold alleged that he was married to Doris.

Third, respondent may correct a mistake of law retroactively, even where a taxpayer has relied on respondent's ruling to his detriment. *Dixon v. United States,* 381 U.S. 68 (1965). "This principle is no more than a reflection of the fact that Congress,

not the Commissioner, prescribes the tax laws. The Commissioner's rulings have only such force as Congress chooses to give them, and Congress has not given them the force of law." *Dixon v. United States, supra* at 73. We conclude below that respondent may look to State law to determine the validity of a foreign divorce where it has in effect been declared invalid, albeit not expressly so, by a court of the domiciliary State of the parties.

Next we turn to the basic issue, whether petitioners were "husband and wife" within the meaning of section 6013 during the years in issue.

At the threshold of this issue, we must face the question whether for Federal income tax purposes the term "husband and wife" is to be construed with reference to State law governing the definition and characterization of marital relationships, or whether Congress intended some nationwide, Federal standard under which a couple could be "husband and wife" for purposes of section 6013 even if under the laws of their particular State they would not have that status. This Court has continuously held that for purposes of section 6013 and other Code provisions the marital status, its existence and dissolution, is defined by State rather than Federal law. *John J. Untermann*, 38 T.C. 93 (1962); *Albert Gersten*, 28 T.C. 756, 770 (1957), affd. on this issue 267 F. 2d 195 (9th Cir. 1959); *Marriner S. Eccles*, 19 T.C. 1049 (1953), affd. per curiam 208 F. 2d 796 (4th Cir. 1953). In the *Gersten* and *Eccles* decisions, we were affirmed by the Courts of Appeals for the Ninth and Fourth Circuits, respectively. After these decisions, however, the Court of Appeals for the Second Circuit decided *Borax' Estate v. Commissioner*, 349 F. 2d 666 (2d Cir. 1965), cert. denied 383 U.S. 935 (1966), revg. our opinion in that case 40 T.C. 1001 (1963). Relying on *Borax*, petitioners assert that we should look to a uniform Federal standard rather than to State law to determine whether a couple is "husband and wife" for purposes of section 6013, and that under that standard they were "husband and wife" for that purpose even if they did not have that status under the law of their domiciliary State, California. Respondent counters that *Borax* is irreconcilable with *Gersten* and that since this case is appealable to the Court of Appeals for the Ninth Circuit, we should apply the *Gersten* rule under our holding of *Jack E. Golsen*, 54 T.C. 742, 757 (1970), affd. 445 F. 2d 985 (10th Cir. 1971), cert. denied 404 U.S. 940 (1971).

We need not apply the *Golsen* rule because despite having been reversed in *Borax,* we remain convinced that our own prior decisions, and that of the Court of Appeals in *Gersten,* are correct. We respectfully disagree with and will not follow so much of the *Borax* decision as holds that the status of "husband and wife" for purposes of section 6013 is to be determined under a uniform Federal standard rather than by the application of State law.

In *Borax,* the Court of Appeals for the Second Circuit considered a factual situation somewhat similar to ours. Herman and Ruth Borax were married to each other but separated when Herman, in 1952, obtained a purported divorce decree from a Mexican court and entered a ceremonial "marriage" with Hermine. In 1953 a New York State court decreed the Mexican "divorce" invalid and declared that Herman was still married to Ruth and not to Hermine. Nevertheless, Herman and Hermine continued to file joint returns, claimed a deduction for payments Herman had made to Ruth under the 1946 separation agreement, and claimed dependency exemptions for Hermine's parents and her children by a prior marriage. Respondent claimed that they were not husband and wife, not entitled to file a joint return, and not entitled to deduct the dependency exemptions or the support payments. We agreed on all counts with respondent, but we were reversed by the Court of Appeals for the Second Circuit.

The majority opinion considered first the support payments. Under the applicable law, these would be includable to Ruth and deductible to Herman if the two were "divorced under a decree of divorce." The majority opinion held that they were so divorced for tax purposes despite the determination of the court of the State in which they were domiciled that the Mexican divorce was a nullity. The majority pronounced a "rule of validation" in effect giving conclusive effect for tax purposes to a decree of divorce which had been held a nullity for every other purpose, so that only respondent was bound thereby.

We find ourselves unable to accept the *Borax* reasoning, at least insofar as the requirements of section 6013 are concerned. Whatever merit there may be in the view that for tax purposes a divorce decree should not be challenged by the taxing authority until it has been adjudicated a nullity by a State court with jurisdiction over the parties, we deal here with a case in which, in California judicial proceedings subsequent to the Mexican divorce, all parties treated the Mexican decree as a nullity, and

the California court in 1971 entered a final decree of divorce, thereby inferentially holding invalid the prior purported Mexican decree. In such a case, we believe the State court has spoken clearly enough to justify respondent in considering himself free from any obligation to be left alone in being bound by the Mexican divorce and purported remarriage. We need not and do not decide that respondent is free to probe on his own for defects in purported marriage ceremonies. However, we are of the view that in the face of the parties' own admissions in formal judicial proceedings, leading to a divorce decree which could not properly have been issued had the parties not then been husband and wife, respondent is not bound to disregard such expressions of the situation under State law. We remain of the view that the marital relationship is authorized and defined by State law alone, that Congress never intended to construct a set of rules under which a couple could be "husband and wife" for all but tax purposes or for tax purposes only, and that congressional references to a status so uniquely a creature of State law as that of "husband and wife" must be presumed to intend, in the absence of clear directions to the contrary, reference to State rather than Federal law as a starting point for analysis.

Were we to depart from the clearly demarcated path laid down for us by State law and begin to construct "for-tax-purposes-only" marriages and divorces, we would shortly be faced with insoluble conundrums rooted in the reality that marital status is in fact a matter of State law. For example, a spouse may obtain an invalid Mexican decree. If thereafter he "remarries" the "rule of validation" would allow him to file joint returns with his new "spouse." Presumably, he would not be permitted so to file with his original spouse, for this would give him a choice of joint return partners, which Congress could scarcely have intended. But what if he resumes cohabitation with his original spouse? Under State law he remains married to her, but under the "rule of validation" he apparently is not, and could not file joint returns. No "tax law" marriage ceremony is available to rectify the situation because marriage ceremonies in fact take place only under State law, so it is hard to see how the situation could be rectified. Until Congress instructs us otherwise, we consider it proper to leave questions of marital status to State law. We therefore find ourselves unable to espouse the *Borax* "rule of validation" in circumstances where State courts of competent jurisdiction have

directly or indirectly determined the invalidity of divorce decrees previously rendered by courts without jurisdiction to do so. Accordingly, we reaffirm our position in *Gersten* and hold that we can look only to State law to determine whether Harold and Louise were husband and wife in 1967 through 1970. See and compare *Estate of Wesley A. Steffke,* 64 T.C. 530 (1975), and *Estate of Leo J. Goldwater,* 64 T.C. 540 (1975), filed this day.

The next question is to which State law we should look. It is clear that no State has jurisdiction to grant a valid divorce which would not be recognized under the laws of the parties' domiciliary jurisdiction, when both parties are domiciled in a different State. *Williams v. North Carolina,* 325 U.S. 226, 229-231 (1945) (second *Williams* case); *Sohnlein v. Winchell,* 230 Cal. App. 2d 508, 511, 41 Cal. Rptr. 145, 147 (4th Dist. Ct. App. 1964). Since we have found the domicile of both parties to be California, we must look to California law to determine the marital status of Harold and Louise during the years in issue, and specifically to the effect under California law of the Mexican decree.

It is clear under the law of California that a decree of divorce by a foreign jurisdiction between two California domiciliaries is a nullity. *Sohnlein v. Winchell, supra;* Cal. Civ. Code sec. 5001 (West 1970). We have found that Harold and Louise were both California domiciliaries when the Mexican decree was entered. This finding is based in part upon Harold's allegation in his November 20, 1967, complaint that he was then and had been for more than 1 year a California resident. While petitioners seek to denigrate the effect of this allegation by referring to it as a mere "standard allegation" in a "form book complaint," this goes merely to the weight we should assign to the statements. In the absence of any evidence to the contrary, and Harold introduced none, we cannot assume that Harold's own allegations are erroneous, and we must conclude on the basis of this admission, the only available evidence, that he was a California resident during the Mexican proceedings, so that under California law the Mexican decree is to be considered a nullity.

Harold points out correctly that under California law, a ceremonial marriage is presumed to be valid. Cal. Evid. Code sec. 663 (West 1966). However, the presumption that a marriage is valid remains only so long as there is no substantial evidence to the contrary, and where such evidence is offered, the presumption

disappears. *Clendenning v. Parker,* 69 Cal. App. 685, 231 P. 765 (2d Dist. Ct. App. 1924). Here Harold and Doris were divorced as a result of actions for divorce filed by both of them in California after Harold had gone through his Nevada marriage ceremony with Louise. Louise, in her response to Doris' action, alleged that Harold's Mexican divorce was invalid, and Harold in his divorce complaint alleged on November 20, 1967, that he had been a California resident for more than 1 year and was still married to Doris. The presumption that Harold's and Louise's marriage was valid has been overcome by both parties' contrary admissions, uncontradicted by the record.

We therefore conclude that Harold and Louise were not husband and wife within the meaning of section 6013, and were not entitled to file joint returns with each other during the years in issue.

*Decisions will be entered under Rule 155.*

Reviewed by the Court.