ESTATE OF ELAINE E. FELT, DECEASED, CONSTANCE H. FELT, JONATHAN S. FELT AND ALBERT I. EDELMAN, EXECUTORS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent IRVING M. FELT, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Felt v. Commissioner
Docket Nos. 6961-78; 7079-78.
United States Tax Court
T.C. Memo 1987-465; 1987 Tax Ct. Memo LEXIS 461; 54 T.C.M. (CCH) 528; T.C.M. (RIA) 87465; September 16, 1987; As amended September 21, 1987; As amended September 29, 1987 William Mulligan, for the petitioner in docket No. 6961-78. Peter J. Rothenberg, Mark H. Alcott, Mildred Ellen Robb and Eileen S. Silvers, for the petitioner in docket No. 7079-78. Frances J. Honecker, and Roland Barral for the respondent. WRIGHT
MEMORANDUM OPINION WRIGHT, Judge: In these consolidated cases, respondent determined deficiencies in petitioners' Federal income tax and additions to tax for the taxable year 1973 as follows: Additions to Tax
Petitioner
Deficiency
Sec. 6651(a) [1]
Sec. 6654
Elaine E. Felt [2]
$ 18,410.00
$ 4,602.50
$ 589.12
Irving M. Felt
54,144.57
5,235.16
-0-
*463 After concessions by the parties, the issues for consideration are (1) whether an ex parte divorce decree obtained by Irving M. Felt (Irving) in the Dominican Republic will be recognized for Federal income tax purposes; (2) whether amounts paid by Irving to Elaine E. Felt (Elaine) during 1973 constitute alimony, which would require their inclusion in Elaine's gross income and would permit their deduction by Irving; (3) whether life insurance premiums paid by Irving constitute alimony; (4) whether Irving is entitled to an exemption for Serene Leavenworth Felt; (5) whether petitioners are liable for additions to tax under section 6651(a); and (6) whether petitioner Elaine Felt is liable for an addition to tax under section 6654. The facts have been stipulated and are *464 so found. The stipulations of fact, together with the exhibits attached thereto, are incorporated herein by this reference. At the time the petitions in this case were filed, both Elaine and Irving resided in New York, New York. Elaine and Irving were married on May 20, 1945, in New York City. Until her death, Elaine had been a resident and domiciliary of New York State. Irving was a resident and domiciliary of New York State from 1945 until 1982, when he became a resident and domiciliary of California. Elaine and Irving had two children, Constance Felt and Jonathan Felt. In 1973, each was over the age of 21. In January 1973, Irving moved out of the family home at 991 Park Avenue and set up residence at the Plaza Hotel. After that date, Elaine and Irving lived separate and apart. Elaine and Irving never entered into a formal separation agreement, and no judicial decree of separation or separate maintenance was ever entered with respect to their marriage. On February 15, 1973, Irving obtained a decree of divorce from Elaine in the Court of First Instance of the Judicial District of San Cristobal, Dominican Republic (the Dominican divorce decree). Elaine was never served *465 personally or by mail with written notice of the Dominican divorce proceeding. She was not served with notice of entry of the Dominican divorce decree, nor did she appear personally or through counsel in the Dominican divorce proceeding. Constructive notice of the proceeding was given to Elaine, as required by Dominican law, by publican in the Santo Domingo newspaper "Ultima Hora" on February 3, 5 and 6, 1973. On April 17, 1973, Irving participated in a marriage ceremony with Serene Leavenworth Felt outside the United States. Since that date, Irving and Serene have lived together, purchased property jointly, and have held themselves out as husband and wife to friends, relatives and business associates. At the time Irving obtained the Dominican divorce decree and married Serene in the Dominican Republic in 1973, Elaine heard rumors from friends and acquaintances concerning Irving's actions. [3] However, Elaine did not actually see the Dominican divorce decree until sometime after she celebrated her 65th birthday on November 24, 1976. When Elaine went to an office of the Social Security Administration to ascertain her eligibility for benefits, she saw the Dominican divorce decree *466 in the file and was given permission to examine it by an employee. The Dominican divorce decree has never been declared invalid by any court. At the time of trial in this case, an action which had been brought by Elaine against Irving and Serene Leavenworth Felt to declare the Dominican divorce decree invalid was pending in the Supreme Court of the State of New York, County of New York. That action remained unresolved as of the date of Elaine's death. The Dominican divorce decree required Irving to pay Elaine a "food pension" in the amount of the lesser of $ 50,000 or one-third of his gross income. On his Federal income tax return for 1973, Irving deducted $ 43,750 which he designated as alimony paid to Elaine pursuant to the Dominican divorce decree. This amount *467 was the pro rata portion of the $ 50,000 required by the Dominican divorce decree for the period from February 15, 1973, when the decree was entered until December 31, 1973. The payments made by Irving on Elaine's behalf in 1973 were as follows: Payments
Amounts
Payments to Elaine Felt
$ 26,000.00
Douglas Elliman - rent
7,552.38
Equitable Life Assurance Society
2,968.67
Phoenix Life Insurance Mutual Co.
4,179.50
Payment for expenses of Elaine Felt
7,240.72
Total
$ 47,941.27
Included in the total amount which Irving paid on Elaine's behalf in 1973 are whole life insurance premiums totaling $ 7,148.17. The policies on which these premiums were paid insured Irving's life. Prior to and during 1973, Elaine was the owner and beneficiary of the policies. However, Irving had borrowed on the cash value of these policies and had loans outstanding on both policies in 1973. Elaine did not file a Federal income tax return for taxable year 1973. A substitute return was filed for Elaine by the Manhattan district director's office pursuant to section 6020(b). Irving filed a joint Federal income tax return with Serene Felt for the taxable *468 year 1973 with the director, Brookhaven Service Center, Holtsville, New York. This return was filed late on October 31, 1974. The filing date for Irving's return had been extended to September 15, 1974. No further extensions of time to file were requested. Separate statutory notices of deficiency were issued to Elaine and Irving on March 30, 1978. In these notices of deficiency, respondent took alternative positions, alleging that the payments by Irving to or on behalf of Elaine constituted gross income to Elaine and were deductible as alimony by Irving or, in the alternative, that such amounts are not includable in Elaine's gross income and are therefore not deductible by Irving. Respondent further disallowed the amounts paid by Irving for life insurance premiums on behalf of Elaine in 1973. In addition, respondent disallowed the spousal exemption claimed by Irving for Serene Leavenworth Felt and recomputed Irving's income tax liability pursuant to married, filing separately status. Finally, respondent determined additions to tax for late filing with respect to both Irving and Elaine and an addition to tax for underpayment of estimated tax with respect to Elaine. The *469 first issue for consideration is whether the Dominican divorce decree will be recognized for Federal income tax purposes. If the decree is recognized, the amounts paid by Irving to Elaine in accordance with this decree will be deductible as alimony by Irving and includable in Elaine's gross income. Elaine contends that in the absence of any written agreement of separation, or divorce or separation judgment rendered by a court having jurisdiction over the parties or marital res, the Commissioner's determination that the sums she received are taxable alimony deprives her of due process of law. She asserts that under New York law there is no question that the Dominican divorce decree is invalid. In essence she asks this Court to apply New York law to declare the Dominican divorce decree and Irving's subsequent remarriage null and void for Federal income tax purposes. Although respondent issued protective notices of deficiency, he argues, on brief, that the Dominican divorce decree should be recognized for Federal income tax purposes and that Irving is therefore entitled to a deduction for amounts paid to or on behalf of Elaine and that Elaine must include such amounts in income. *470 Both respondent and Irving take the position that because neither the Dominican Republic or the New York State courts have declared the Dominican divorce decree invalid, it should be respected for Federal income tax purposes. [4] In support of this argument, they cite Borax' Estate v. Commissioner,349 F.2d 666 (2d Cir. 1965), cert. denied 383 U.S. 935 (1966), revg. 40 T.C. 1001 (1963). See also Wondsel v. Commissioner,350 F.2d 339 (2d Cir. 1965). *471 In Borax,the United States Court of Appeals for the Second Circuit adopted a "rule of validation" with respect to foreign divorces. The rule of validation established in Borax attempts to apply a uniform Federal standard, rather than state law, in determining marital status. In that case, the Second Circuit determined that the mere fact that the marital domicile of the parties does not recognize a foreign divorce does not render it a nullity for Federal income tax purposes. The facts in Borax are similar to the facts at issue herein. Ruth and Herman Borax were married in New York City in 1935. They were separated in 1946 and in 1952 Herman obtained a decree of divorce in Mexico. Several weeks later, Herman married Hermine, first in Mexico and again in New Haven, Connecticut. Subsequently, Ruth commenced declaratory judgment proceedings in New York attacking the validity of the divorce and the second marriage. The New York court found that Ruth was the lawful wife of Herman, that the divorce obtained by Herman in Mexico was invalid and that Herman and Hermine were not husband and wife. *472 Borax' Estate v. Commissioner,supra at 668. Respondent issued alternative deficiency notices to both Herman and Ruth. This Court held that the decision of the New York court was controlling. 40 T.C. 1001, 1008. Although both parties were New York domiciliaries at the time of the divorce, Herman went to Mexico alone and Ruth did not participate in the Mexican divorce. Therefore, we held that the payments made by Herman to Ruth pursuant to a 1946 separation agreement which was incorporated into the Mexican divorce were not incident to a divorce for purposes of section 71(a)(1). [5]
As to the second issue of whether Herman and Hermine, the second wife, were entitled to file joint returns for the year involved, this Court concluded that the determination of whether they were husband and wife within the meaning of section 6013 would normally depend on whether Herman and Ruth were legally divorced. Because *473 the New York court had determined that the Mexican divorce was invalid and that Herman and Hermine were not husband and wife, we held that this was conclusive against the right of Herman and Hermine to file joint returns. We emphasized that "this is not a matter of construction of the Federal statute but a question of determining the marital status of the parties which we have repeatedly held is a matter peculiarly within the province of the States wherein the parties reside." 40 T.C. at 1010. Herman appealed the decision of this Court to the Second Circuit Court of Appeals. The Second Circuit stated: The subsequent declaration of invalidity by a jurisdiction other than the one that decreed the divorce is of no consequence under these provisions of the tax law. This rule of validation tends to promote some measure of certainty and uniformity, important goals of the Federal tax scheme. [Citations omitted.]
349 F.2d at 670. Therefore, that court found that the payments from Herman to Ruth were deductible during the years at issue. In examining whether Herman and Hermine were entitled under section 6013 to file a joint return, the Second Circuit *474 determined that it would make little sense for them to recognize the Mexican divorce for purposes of alimony and at the same time recognize a judgment which was predicated on a refusal to recognize that divorce. Therefore, the Second Circuit recognized the second marriage for purposes of section 6013. 349 F.2d at 675-676. Both Irving and respondent argue that because appeal in the instant case would lie to the Second Circuit, we are bound by our holding in Golsen v. Commissioner,54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), cert. denied 404 U.S. 940 (1971), to follow the rule established in Borax.
This Court has long held that the marital status, its existence and dissolution, is defined by State rather than Federal law. Lee v. Commissioner,64 T.C. 552 (1975), affd. 550 F.2d 1201 (9th Cir. 1977), and cases cited therein. Accordingly, we have often declined to apply the "rule of validation" as established by the Second Circuit in Borax. For example, in *475 Lee v. Commissioner,supra, [6] a case involving whether the husband was entitled to file joint returns with his second wife after he obtained an ex parte Mexican divorce, we concluded that the Commissioner may look to State law to determine the validity of a foreign divorce where it has been in effect declared invalid, albeit not expressly so, by a court of the domiciliary State of the parties. We emphasized that the status of "husband and wife" for purposes of section 6013 should be determined by application of State law, rather than under a uniform Federal standard: We find ourselves unable to accept the Borax reasoning, at least insofar as the requirements of section 6013 are concerned. * * * *476 Until Congress instructs us otherwise, we consider it proper to leave questions of marital status to state law. We therefore find ourselves unable to espouse the Borax "rule of validation" in circumstances where state courts of competent jurisdiction have directly or indirectly determined the invalidity of divorce decrees previously rendered by courts without jurisdiction to do so.
64 T.C. a 559-560. Similarly, in Estate of Steffke v. Commissioner,64 T.C. 530 (1975), affd. 538 F.2d 730 (7th Cir. 1976), and Estate of Goldwater v. Commissioner,64 T.C. 540 (1975), affd. 539 F.2d 878 (2d Cir. 1976), [7] cases in which the State courts had declared foreign divorces to be invalid, we distinguished the alimony provisions of sections 71 and 215 from those involving "surviving spouse" under section 2056. We concluded that the latter are necessarily dependent upon the law in the State in which the decedent's estate is being administered and that the underlying policy considerations of the Borax case were therefore not applicable. [8]
*477 Unlike the situation in the cases mentioned above, no State court has declared, either directly or indirectly, that the Dominican divorce decree herein is invalid. Nor has the Dominican court which issued the decree declared it to be invalid. Thus, notwithstanding its doubtful validity under New York law, [9] we are mandated by Golsen to apply the "rule of validation, " as set forth in Borax, to the instant proceeding. [10] We therefore conclude that such divorce decree is valid for purposes of resolving the issues before us. [11] Accordingly, we hold that Elaine and Irving were divorced during the year in issue. *478 Under section 215 the husband is allowed a deduction if payments made within his taxable year are includable in the gross income of the wife under 71. [12]Section 71 provides, inter alia, that before payments to a former wife are includable in her income and therefore deductible by her former husband, there must be (1) a divorce under a decree of divorce; (2) the payments must be periodic (see section 1.71-1(d), Income Tax Regs.); (3) the payments must be received after said decree; (4) the payments must be in discharge to a legal obligation arising out of the marital or family relationship; (5) the obligation must be imposed or incurred under the decree or under a written instrument incident to such divorce; and (6) amounts paid under the terms of the decree for the support of minor children will not be considered as alimony. As previously noted, pursuant to the Dominican divorce decree, Irving made payments to Elaine in the amount of $ 40,793.10 in 1973. Thus, this amount is includable in Elaine's gross income and deductible by Irving for taxable year 1973. *479 We now turn to the issue of whether the life insurance premiums paid by Irving in the amount of $ 7,148.17 are deductible as alimony and thus includable in Elaine's gross income. Respondent contends that such amounts are not deductible because Irving retained the right to borrow on the face value of the policies. Irving maintains that the premium amounts he paid are deductible because Elaine's ownership of the policies and his borrowings against their cash surrender value preceded the divorce, and Elaine's economic rights, with respect to the policies, remained unchanged after the divorce. He asserts that his alimony obligation in part by paying insurance premiums should be viewed no differently from his payment of Elaine's other expenses. Because section 215 is complementary to section 71, in order to find that such premiums are deductible by Irving we must first determine whether the insurance premiums should be considered as alimony. We conclude that they are not. Section 71 "applies only where the legal obligation being discharged arises out of the family or marital relationship in recognition of the general obligation to support, which is made specific by the instrument *480 or decree." H. Rept. No. 2333, 77th Cong., 2d Sess. (1942), 1942-2 C.B. 372, 428; S. Rept. No. 1631, 77th Cong., 2d Sess. (1942, 1942-2 C.B. 504, 568; section 1.71-1(b)(4), Income Tax Regs. In this case, the divorce decree simply states that Irving shall pay a "food pension" of $ 50,000, but not to exceed one-third of his gross income if his income falls below $ 150,000. The decree does not require that Irving satisfy his obligation to support, in whole or in part, by maintaining a whole life insurance policy on his life. Thus, we do no believe Congress intended that the "legal obligation arising out of the family or marital relationship in recognition of the general obligation to support" was meant to apply to payment of insurance premiums where no separation agreement or property settlement was ever executed, the decree is silent, and there was never any ancillary agreement or order subsequent to the divorce respecting this issue. Hence, the insurance premiums in the amount of $ 7,148.17 are not deductible by Irving and are not includable in Elaine's gross income. We need not reach respondent's argument that such amounts would not be deductible because *481 Irving retained the right to borrow on the face value of the policies. Further, because we have determined that Elaine and Irving were divorced for Federal income tax purposes, we conclude that it was proper for Irving and Serene to file a joint return and Irving is therefore entitled to a spousal exemption for Serene for the taxable year 1973 pursuant to section 151(b). See Borax v. Commissioner, 359 F.2d at 675-676. The next issue for consideration is whether petitioners are liable for additions to tax under section 6651(a) and whether Elaine is liable for an addition to tax pursuant to section 6654. Section 6651(a) provides for an addition to tax for failure to file a timely return unless the taxpayer can show that such failure was due to reasonable cause and not due to willful neglect. Section 301.6651-1(c)(1), Proced. and Admin. Regs., provides in part as follows: "If the taxpayer exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time, then the delay is due to a reasonable cause." There have been numerous cases dealing with whether taxpayers have shown reasonable cause for failure to file *482 returns. For example, it has been held that where a taxpayer failed to file a return in reliance on the advice of a lawyer or a certified public accountant reasonable cause has been shown. See Hrobon v. Commissioner,41 T.C. 476 (1964); and Twinam v. Commissioner,22 T.C. 83, 90-91 (1954). See also United States v. Boyle,469 U.S. 241 (1985), and cases cited therein. The parties have stipulated that Irving's 1973 Federal income tax return was due on September 15, 1974, and was filed on October 31, 1974. There was no evidence presented with respect to reasonable cause for Irving's late filed return. Therefore, we find that Irving is liable for the addition to tax under section 6651(a). In our view Elaine also has not shown reasonable cause for failure to file an income tax return for the year 1973. It has long been held that mere ignorance of the necessity of filing a return or even an honest belief by a taxpayer that he is not required to file a return is insufficient to constitute reasonable cause for failure to file. *483 Adams v. Commissioner,46 T.C. 352, 363 (1966), and cases there cited. While we are sympathetic to Elaine's position, nevertheless she knew that she was regularly receiving payments from Irving. Further, although she never was served personally with a copy of the divorce decree, she had some knowledge of Irving's actions. These facts should have at least caused her to seek professional advice whether she should file tax returns. See Shomaker v. Commissioner,38 T.C. 192 (1962). Finally, we note that her belief that the Dominican divorce decree is invalid is insufficient to establish reasonable cause. Barnes v. Commissioner,496 F.2d 1197 (6th Cir. 1974), affg. a Memorandum Opinin of this Court. Section 6654(a) provides for an addition to tax for underpayment of estimated tax with certain exceptions not here relevant. The provisions of this section are mandatory when there has been an underpayment of estimated tax and existence of any extenuating circumstances for the underpayment is irrelevant. *484 Estate of Ruben v. Commissioner,33 T.C. 1071 (1960). Accordingly, with respect to Elaine, we also sustain respondent's determination of additions to tax under sections 6651(a) and 6654(1) for the year 1973. To reflect the foregoing, Decisions will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code or 1954, as amended and in effect during the year here in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. ↩
2. Subsequent to the date of trial in this case, petitioner Elaine E. Felt died. The executors of her estate were substituted as a party by order of this Court dated March 11, 1986. ↩
3. In April of 1973, Elaine wrote a personal letter to Irving's lawyer who was also a family friend, stating that Irving had never told her "when he had gotten his divorce or when he would remarry." Later in the letter she wrote, "[Irving] also has an invalid divorce and is remarrying illegally." Ironically, her letter is dated April 17, 1973, the day Irving and Serene were married in the Dominican Republic. ↩
4. It is respondent's position that a divorce will be recognized for Federal income tax purposes until a court of competent jurisdiction declares the divorce to be invalid. Where a State court, which has jurisdiction over the parties or the subject matter, declares a prior divorce to be invalid, the Service will usually follow the later court decision rather than the divorce decree for Federal income tax purposes. Rev. Rul. 67-442, 1967-2 C.B. 65. Thus, in those situations respondent has stated that it will not follow the decisions in Borax' Estate v. Commissioner,349 F.2d 666 (2d Cir. 1965), cert. denied 383 U.S. 935 (1966); and Wondsel v. Commissioner,350 F.2d 339 (2d Cir. 1965), cert. denied 383 U.S. 935 (1966). Respondent contends, however, that in the instant case, the divorce is recognizable under either its revenue ruling or the position taken by the Second Circuit in Borax.↩
5. The separation agreement between Herman and Ruth was executed prior to the enactment of the 1954 Code. At the time it was executed, payments incident to a separation agreement could not be deducted as alimony unless the parties were divorced. ↩
6. See also Gersten v. Commissioner,28 T.C. 756 (1957), affd. on this issue 267 F.2d 195 (9th Cir. 1959). In Gersten, the taxpayer obtained a Mexican divorce and remarried in Mexico following an interlocutory decree of divorce in California, before such divorce became final. At the time of the remarriage, the taxpayer and his second wife were both California domiciliaries. We held that because California would not recognize the Mexican divorce and subsequent remarriage, the taxpayer and his purported second wife were not entitled to file a joint return for the year in issue. Gersten v. Commissioner,supra at 770. The United States Court of Appeals for the Ninth Circuit affirmed our decision with respect to this issue and emphasized that State law should be used to determine marital status for Federal tax purposes. Gersten v. Commissioner,supra↩ at 199-200. 7. In affirming this Court's decision in Estate of Goldwater v. Commissioner,64 T.C. 540 (1975), affd. 539 F.2d 878 (2d Cir. 1976), the Second Circuit noted that the holding in Borax was limited to the provisions of sections 71 and 215 and that for estate tax purposes, in determining the surviving spouse, there was no comparable flexibility in the provisions of section 2056. 539 F.2d at 881↩. 8. In Borax, the Second Circuit emphasized that the "rule of validation" furthered "Congressional policy by placing the tax burden of all general marriage settlement payments on the party entitled to their enjoyment, * * * and [did] so without interfering with any other Congressional tax policy." 349 F.2d at 670-671↩ (citations omitted). 9. Under New York law, ex parte foreign divorce decrees are not entitled to recognition. Rosenbaum v. Rosenbaum,309 N.Y. 371, 376 (1955). "Such a decree is totally invalid for all purposes, including estoppel, and it is a nullity from which no rights of any kind spring." Buckley v. Buckley,10 Misc. 2d 596, 597-598; 172 N.Y.S. 2d 367, 369↩ (N.Y. County Surr. Ct. 1958) (citations omitted). 10. We need not reach the issue of whether or not it would be appropriate for this Court to determine the validity of a divorce decree or subsequent marriage where a court of competent jurisdiction has not ruled. But see Borax v. Commissioner,349 F.2d 666, 676 (2d Cir. 1965) (Friendly, J., dissenting) (Congress did not intend that the * * * courts * * * should set themselves up as domestic relations tribunals); Lee v. Commissioner,64 T.C. 552, 557-558 (1975), affd. 550 F.2d 1201↩ (9th Cir. 1977) (merit in the view that for tax purposes a divorce decree should not be challenged by a taxing authority until it has been adjudicated a nullity by a State court with jurisdiction over the parties). 11. Because of our conclusion that the decree of divorce is to be respected, we need not address Irving and respondent's alternative argument that any action by Elaine to invalidate the Dominican divorce decree in New York would be barred by the doctrine of laches. ↩
12. We note that the tax rules on divorce and separation, and the tax treatment of alimony, are substantially restructured in sec. 71↩, as amended by the Tax Reform Acts of 1984 and 1986.